IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

O'DELL ADKINS,

    Plaintiff,

V.                                  CIVIL ACTION NO. 3:04-0554

JO ANNE BARNHART,
Commissioner of Social Security,

    Defendant.

**FINDINGS AND RECOMMENDATION**

In this action, filed under the provisions of 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his application on May 6, 2002, alleging disability commencing March 14, 2001, as a consequence neck and low back pain, hearing loss, high blood pressure, asbestosis and cholesterol. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, he filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was fifty-eight years of age and had obtained an eleventh grade education and GED. His past relevant employment experience

consisted of work as an industrial truck operator. In his decision, the administrative law judge found that plaintiff suffered from "neck and back problems, bilaterally [sic] hearing loss, HTN, and lung problems," impairments he considered severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that he had the residual functional capacity for a limited range of medium level work. On the basis of this finding, and relying on Rule 203.15 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff testified that he is precluded from working mainly by neck pain which radiates down his left arm, low back pain which radiates down the left leg, left shoulder pain, dizziness, headaches, hypertension, hearing loss, shortness of breath due to asbestosis and depression/anxiety. His testimony indicated that he is not receiving any treatment for shortness of breath and has had no counseling or other treatment by a mental health professional.

Plaintiff relates the onset of his neck pain to a December 1998 motor vehicle accident. He was initially treated by chiropractor Alan Wild, beginning on January 20, 1999, for complaints of left side neck pain without headache. By January 29, 1999, plaintiff was reporting less pain and range of motion was increased. On March 1, 1999, Dr. Wild indicated plaintiff had returned to work. Sixteen days later he decreased the number of treatments per week from three to two due to plaintiff's improvement. A note from April 7, 1999, reflects visits were further decreased

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404 Subpart P, Appendix 2, Table No. 3.

to one per week and on June 23, 1999, noting that cervical range of motion was within normal limits, Dr. Wild released plaintiff from his care relating there was no permanent impairment.

Even though plaintiff testified that he left work on April 14, 2001, because he could not handle it any longer due to neck and back pain, the record shows that he did not seek further treatment from June 23, 1999 until June 19, 2001, three months after he left his job. On that date he was seen by Dr. Bal Bansal with complaints of intermittent neck pain. After observing muscle spasm in the cervical area which did not restrict range of motion, Dr. Bansal diagnosed post traumatic cervical sprain and ordered additional testing such as an MRI, interpreted as normal, and nerve conduction studies/electromyography, also interpreted as normal. While Dr. Bansal continued treating plaintiff until at least May 20, 2003, his visits were two to three months apart, and his reports consistently document neck pain as plaintiff's only physical problem. They also demonstrate no clinical abnormalities other than spasm in the cervical area, which ranged from mild to "significant," and range of motion limitation on most occasions. Dr. Bansal treated plaintiff with Darvocet N-100 for pain,[3] Vioxx[4] and Xanax[5] and recommended that he stay as active as possible but avoid "excessive" lifting. In two reports, he also recommended that plaintiff avoid excessive bending and stooping. According to the record, Dr. Bansal was the only physician who treated plaintiff.

---

[3] This medication is indicated for the relief of mild to moderate pain. Physician's Desk Reference 402 (59th Ed. 2005).

[4] Vioxx is indicated for, inter alia, relief of the signs and symptoms of osteoarthritis. Id. at 2174.

[5] This medication is indicated for the management of anxiety disorder and panic disorder. Id. at 2764.

The remainder of the evidence demonstrates that audiometric testing did reveal some degree of hearing loss for which plaintiff wore hearing aids. He also was notified in March of 1994 that a chest X-ray showed scarring suggestive of asbestosis. Pulmonary function testing conducted on March 3, 2000, was interpreted as showing a mild obstructive and ventilatory impairment with an excellent response to bronchodilation. As noted, plaintiff had not been treated for a pulmonary condition and, when examined by Dr. Stephen Nutter, the Commissioner's consultative evaluator, on July 2, 2002, there were no pulmonary abnormalities detected. A chest X-ray performed at this time was interpreted as showing only borderline normal heart size without any lung abnormalities. Pulmonary function test results could not be interpreted due to plaintiff's poor effort.

Despite the absence of complaints and lack of treatment for most of his conditions, plaintiff nonetheless reported to Dr. Nutter that he had constant neck and back pain with radiation down the left arm and leg and that he had headaches every day. The exam did not reveal abnormalities in the left arm or shoulder or in the hands.[6] Similarly, plaintiff's lower extremities showed no deficits. The cervical and lumbar areas of the spine were tender but were not in spasm. Range of motion in both areas was somewhat diminished but there were no neurological deficits or, as noted, any indication of radiculopathy.

While plaintiff has not had any mental health treatment, Dr. Bansal, without explanation, began prescribing Xanax on September 16, 2002. In a report from January 14, 2003, this physician noted that plaintiff was doing "quite very well" as far as his generalized anxiety

---

[6] While plaintiff's grip strength, when measured by a machine, was weak for his age, Dr. Nutter did not believe there was any deficit in this area after having plaintiff squeeze his finger. He also noted plaintiff had no problem with picking up coins or writing.

disorder was concerned and a "psychiatric" exam[7] was characterized as "basically unremarkable." In a March 13, 2003 report, submitted to the Appeals Council, Dr. Bansal related that plaintiff's depression "is doing very well with the current medication." Psychiatric exam was again considered unremarkable and Dr. Bansal noted plaintiff had not had "any further" anxiety attacks, although there is no documentation of any before this time. Also noted is this doctor's comment that plaintiff's pain "is reasonably better with the current medication." On May 20, 2003, plaintiff's depression was described as recently getting worse and he was "still" having anxiety attacks. The psychiatric exam revealed a depressed affect and mild degree of "free floating anxiety." Dr. Bansal recommended adding Effexor[8] to plaintiff's medications.

In his hearing testimony, plaintiff said little about his alleged mental impairments but did state that no doctor had told him he was depressed or anxious and that he had not had mental health treatment or been recommended to have it. Based on these factors and considering Dr. Bansal's comments, the administrative law judge determined that plaintiff's ability to work was not significantly limited by depression or anxiety, a finding well supported by the evidence.

In terms of plaintiff's residual functional capacity, several sources provided assessments including Dr. Bansal, who opined on February 18, 2003, that plaintiff could lift/carry twenty pounds occasionally and less than ten pounds frequently; stand and walk fifteen to twenty minutes at a time, with use of a cane; sit fifteen to twenty minutes at a time; never climb, crouch or crawl; and, occasionally balance, stoop and kneel. He also noted reaching was limited in all

---

[7] Although Dr. Bansal labeled these "psychiatric" exams, they were merely his observations of plaintiff's mental status.

[8] This medication is an antidepressant indicated for the treatment of major depressive disorder. Physician's Desk Reference, supra at 3321.

directions for both arms, more so on the left.  Dr. Wild, the chiropractor who treated plaintiff shortly after his injury, was of the opinion that plaintiff could lift/carry fifty pounds occasionally, twenty frequently; stand/walk six hours per day; sit six hours per day; and, occasionally climb, kneel, crouch and crawl.  He did not feel reaching was limited.  The third evaluator, a state agency medical advisor, felt plaintiff could lift and carry fifty pounds occasionally, twenty-five frequently, and should avoid temperature extremes.

The administrative law judge, after considering the entire record, determined that Dr. Bansal's limitations were more restrictive than the evidence as a whole supported, and particularly his own reports.  He noted the lack of positive clinical signs other than limited motion and muscle spasm, as well as plaintiff's ability to walk smoothly and normally without a cane.  He also noted the negative MRI and EMG findings and absence of a referral to physical therapy or a pain clinic. Similarly, despite having medical insurance, plaintiff did not return to his chiropractor for additional treatment though he acknowledged his prior treatment was helpful.

In terms of exertional capacity, the administrative law judge concluded that the evidence was more consistent with the assessments from the other two evaluators and assessed an ability to perform medium level work with pushing and pulling limited to these weights. Nonexertionally, he found plaintiff should only occasionally climb, crouch, kneel or crawl and should avoid temperature extremes as well as work around unprotected heights or dangerous moving machinery due to complaints of dizziness[9] and poorly controlled hypertension.  Plaintiff's alleged lung impairment would prevent work around excessive dust, fumes or gases.  Finally, due to his

---

[9] Plaintiff testified he experienced dizziness and was taking medication for this, but there is no record of his seeking or receiving treatment for this condition.

hearing impairment, plaintiff should not be exposed to loud noise without hearing protection. In light of the modest clinical findings and limited and conservative treatment, the Court concludes that the administrative law judge's findings have substantial support in the record.

While plaintiff alleged disabling limitations on his activities due to pain, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded his credibility was poor. In making this determination, he cited many factors, including plaintiff's inconsistent reports about his limitations and impairments; the lack of treatment for several of his allegedly limiting conditions; test results which failed to reveal any abnormalities; his ability to return to work after the 1998 car accident, his release from chiropractic treatment well before his alleged onset; and, his failure to seek additional treatment until after he left his job, in addition to a number of other reasons. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of medium, light and sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's

impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: July 19, 2005

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE